IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2014 FEB 13  PM 2:02
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
         DEPUTY

| | |
|---|---|
| SHAKLIA Z. RAZZAK d/b/a Quick Stop Grocery and ZAKARIYA RAZZAK d/b/a Quick Stop Grocery, <br><br>     Plaintiffs, <br><br>-vs- <br><br>UNITED STATES OF AMERICA and TOM VILSACK, <br><br>     Defendants. | <br><br><br><br><br><br>Case No. A-13-CA-207-SS |

# O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendants United States of America and Tom Vilsack's Motion for Summary Judgment [#16], Plaintiffs Shaklia and Zakariya Razzak's Response [#18], and Defendants' Reply [#19]. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

## Background[1]

This is a case challenging the decision of the Secretary of the United States Department of Agriculture Food and Nutrition Service (FNS) to permanently disqualify the Razzaks' Quick Stop Grocery from the government's Supplemental Nutrition Assistance Program (SNAP), colloquially known as "food stamps."

---

[1] The facts in this case are undisputed, and are drawn from the Razzaks' complaint as well as the summary judgment evidence submitted by the parties.

From September 2008 to September 2009, FNS investigated Quick Stop Grocery's compliance with SNAP. This investigation involved undercover informants visiting Quick Stop Grocery and attempting to make unsanctioned purchases with, or exchange funds from, Electronic Benefits Transfer (EBT) cards. An EBT card functions more or less like a debit card, and retailers who have been approved to participate in programs like SNAP may accept payments made with EBT cards. Exchanging EBT funds for cash is known as "trafficking."[2] The penalty for trafficking is a monetary fine, disqualification from SNAP, or both. 7 U.S.C. § 2021.

FNS conducted approximately eighteen different store visits over the course of its investigation. On nine of those occasions, the FNS informants were allowed to purchase ineligible non-food items using their EBT cards. Additionally, over the course of several visits, an FNS informant was allowed to exchange $97.23 in EBT funds for $30.00 in cash. After finishing its investigation and concluding Quick Stop Grocery had engaged in trafficking, FNS sent a charge letter to the Razzaks on December 13, 2012.[3] The charge letter accused Quick Stop Grocery of trafficking and accepting EBT funds in exchange for ineligible items, discussed the possible penalties, and explained the administrative appeal process. The Razzaks were given ten days from receipt of the letter to respond to the charges and present any evidence in their defense.

The Razzaks did not respond within ten days. In fact, the Razzaks did not even receive the letter until January 7, 2013, when they returned from an extended trip abroad. January 7, 2013 was

---

[2] 7 U.S.C. § 271.2 defines "trafficking" as, among other things, "[t]he buying, selling, stealing, or otherwise effecting an exchange of SNAP benefits issued and accessed via Electronic Benefit Transfer (EBT) cards, card numbers and personal identification numbers (PINs), or by manual voucher and signature, for cash or consideration other than eligible food, either directly, indirectly, in complicity or collusion with others, or acting alone."

[3] It appears the lengthy delay in prosecution was due to FNS's desire not to disrupt ongoing FNS investigations into other stores owned by the Razzaks.

also the date FNS issued a determination notice permanently disqualifying Quick Stop Grocery from SNAP. Two days later, on January 9, 2013, the Razzaks sent a letter requesting reconsideration of FNS's disqualification decision. FNS construed the Razzaks' letter as a request for administrative review and gave them twenty-one days to provide any additional material. The Razzaks retained counsel and responded with a letter requesting a monetary penalty be imposed in lieu of disqualification, and offering explanations for the violations.

A final decision was issued on February 14, 2013, affirming FNS's decision to disqualify Quick Stop Grocery. The Razzaks timely filed this lawsuit requesting judicial review of the agency's final decision. *See* 7 U.S.C. § 2023(a)(13) (aggrieved store "may obtain judicial review [of the agency's final decision] by filing a complaint against the United States . . . within thirty days"). Defendants now move for summary judgment.[4]

## Analysis

### I.     Motion for Summary Judgment—Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could

---

[4] Although styled as a "Motion for Summary Judgment," Defendants bizarrely seek relief under Rules 12(b)(1), 12(b)(2), 12(b)(6), and 56. In other words, Defendants seek Rule 12 dismissal of various claims despite filing an answer in this case nine months ago. Defendants' answer also raised no affirmative defenses, jurisdictional or otherwise. *See* FED. R. CIV. P. 12(b) (aptly titled "How to Present Defenses"). The Razzaks expressed confusion at Defendants' amateurish and disjointed motion, to which Defendants responded with righteous indignation. The Court will treat the motion as one seeking summary judgment, and humbly suggest Defendants retain more careful and respectful counsel in future matters.

return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element

essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II. Application

When challenging a SNAP disqualification decision, an aggrieved store owner is entitled to a "trial de novo" by the district court. 7 U.S.C. § 2023(a)(15). The statute authorizes the district court to "determine the validity of the questioned administrative action in issue." *Id.* The Fifth Circuit has interpreted § 2023 as authorizing review of both "the propriety of the sanction as well as the question of whether the violations actually took place." *Otto v. Block*, 693 F.2d 472, 473 (5th Cir. 1982). Because the Razzaks concede the violations occurred, the only question presented here is whether the sanction imposed by FNS is valid. "To be 'valid,' a sanction must not be arbitrary and capricious, and a sanction is arbitrary and capricious if it is unwarranted in law or without justification in fact." *Id.* (quoting *Goodman v. United States*, 518 F.2d 505, 511 (5th Cir. 1975)). If a sanction adheres to the statute, regulations, and relevant FNS guidelines, "the reviewing court may not overturn it as arbitrary and capricious." *Id.* at 474.

Before turning to the merits of the sanction question, the Court must address the timeliness of the Razzaks' review request. By statute, review of the initial notice—i.e., the charge letter—must be requested "within ten days of the date of delivery of such notice." 7 U.S.C. § 2023(a)(3). There is no dispute the Razzaks did not comply with this requirement because they were traveling abroad and did not return to the United States and see the charge letter until the time to request review had expired. If a timely request for review of the initial notice is not made, "the administrative determination shall be final." *Id.* § 2023(a)(4). Only a timely request for review entitles a store owner to an administrative appeal and subsequent judicial review. *Id.* § 2023(a)(5); *Ruhee M., Inc. v. United*

*States*, No. H-05-1547, 2006 WL 1291356, at *3–4 (S.D. Tex. May 5, 2006) (holding a failure to timely request administrative review constitutes a failure to exhaust administrative remedies). In their Response, the Razzaks cite no authority in support of their position their untimely response should be (or even can be) excused. The Court therefore concludes the Razzaks' failure to request review of the initial FNS charge within ten days rendered the initial determination "final" and not subject to later judicial review.

Alternatively, the Court addresses the merits of the Razzaks' request in light of FNS's own administrative review of the Razzaks' charges and the Razzaks' undisputed failure to receive the charge letter until after the ten-day period had expired. Congress has made permanent disqualification a potential penalty even for first-time traffickers. 7 U.S.C. § 2021(b)(3)(B). A civil monetary penalty may be imposed in lieu of disqualification only "if the Secretary determines that there is substantial evidence that such store . . . had an effective policy and program in effect to prevent violations." *Id.* The governing regulations require a store owner to meet four specific criteria in order to qualify for a monetary penalty: (1) the store must have "an effective compliance policy" as described in the regulations; (2) the store must show its compliance policy existed and was in force prior to the violations; (3) the store must have "an effective personnel training program" as specified in the regulations; and (4) the store owners were "not aware of, did not approve, did not benefit from, or [were] not in any way involved in the conduct of approval of trafficking violations," or had not done so on a previous occasion. 7 C.F.R. § 278.6(i).

The Razzaks argue now, as they did on administrative appeal, they had an effective compliance program in place, were personally unaware of the trafficking, and subsequently terminated the lone "rogue employee" responsible for the misconduct. In their Response, the Razzaks

provide no evidence other than the evidence previously submitted to and considered by FNS.[5] This Court is therefore tasked with determining whether FNS's decision was "unwarranted in law or without justification in fact" based, essentially, on the administrative record. *Otto*, 693 F.2d at 473.

Beginning with the Razzaks' history of compliance with SNAP, the administrative review officer concluded "a record of program participation with no documented previous violations does not constitute valid grounds for mitigating the impact of the present serious charges of trafficking." Mot. Summ. J. [#16-1], Ex. 1, at A.R. 121 (Final Agency Decision). The Razzaks identify no error in this determination. SNAP regulations do not explicitly require consideration of prior compliance (or rather, a lack of evidence of prior non-compliance) as a mitigating factor. FNS nevertheless considered the information as part of its analysis of the effectiveness of the Razzaks' existing compliance program. *See* 7 C.F.R. § 278.6(i) (factors for evaluating compliance policies include "[a]ny record of previous firm violations" and "[a]ny other information the firm may present to FNS for consideration"). Any history of compliance must be weighed against the undisputed trafficking which occurred, as well as the numerous instances of store employees allowing FNS informants to purchase ineligible goods with EBT cards.

Turning to the Razzaks' allegation they had terminated the single employee responsible for the offenses, the administrative review officer concluded such subsequent remedial measures did not "provide any valid basis for dismissing the charges or for mitigating the penalty imposed." Final Agency Decision, at A.R. 122. This is because SNAP regulations do not require consideration of

---

[5] The only evidence attached to the Razzaks' response is a two-page affidavit from Zakariya Razzak. The affidavit recounts the same basic story set forth in the Razzaks' appeal letter, and further advances various policy arguments against the disqualification penalty. In the administrative appeal, the Razzaks also submitted a copy of a SNAP training handbook prepared by FNS.

corrective action such as employee termination after a violation occurs. *Id.* Again, the Razzaks identify no specific error with this determination. At most, the regulations allow FNS to consider documentation evidencing a store policy of firing employees who violate SNAP regulations. 7 C.F.R. § 278.6(i) (factors for evaluating compliance policies include "[d]ocumentation reflecting the development and/or operation of a policy to terminate the employment of any firm employee found violating FSP regulations"). The Razzaks offered no such documentation, and even now offer no evidence such a policy existed. To the contrary, the Razzaks contend the rogue employee was fired not for violating SNAP regulations—which the Razzaks profess they had no knowledge of prior to the charge letter—but for stealing from the store. Mot. Summ. J. [#15-1], Ex. 1, at A.R. 87 (appeal letter written by the Razzaks' counsel alleging "the employee who my clients believe is guilty of the trafficking at the store was fired for theft prior to any notice that he was also violating SNAP regulations"). The administrative review officer also found "at least two store employees were involved in the trafficking violations." Final Agency Decision, at A.R. 121. The Razzaks do not challenge this determination, either.

    In sum, the Razzaks contend they submitted adequate evidence of the existence of a compliance policy, along with subsequent remedial actions, which should have entitled them to a monetary penalty in lieu of disqualification. FNS determined the Razzaks had wholly failed to prove they had an effective compliance policy in place either before or after the trafficking. FNS's decision was well supported by the administrative record, and the Razzaks' personal statement they had an effective compliance policy understandably falls short of amounting to "substantial evidence." *See* 7 U.S.C. § 2021(b)(3)(B); *Traficanti v. United States*, 227 F.3d 170, 175 (4th Cir. 2000) ("Store owners cannot simply attest to having effective antifraud programs; rather, they must prove it.").

FNS's sanction had ample factual justification and was warranted by law. *Kim v. United States*, 121 F.3d 1269, 1274 (9th Cir. 1997) (imposing monetary penalty in lieu of disqualification where owner had not proven an effective compliance policy existed "would violate the express language of section 2021(b)(3)(B)"). Because FNS's sanction adhered to the relevant statutory and regulatory authorities, this Court cannot say it was arbitrary or capricious. *Otto*, 693 F.2d at 474.

Finally, the Razzaks' Response primarily advances policy arguments, unsupported by any legal authority whatsoever, claiming the penalty is disproportionate to the size of the offense, and claiming FNS's deadlines are unfair. These arguments dovetail into what the Razzaks' pleaded as a challenge to the constitutionality of the SNAP regulations under the Fifth Amendment's Due Process Clause. The Razzaks' policy arguments are for Congress, not this Court. It was Congress who chose disqualification as a penalty for violating rules governing a benefit program it voluntarily created. The Razzaks' constitutional challenge is a question this Court can resolve, but the challenge is meritless.

The Razzaks do not specify whether they are bringing a substantive or procedural due process challenge. It does not matter, because the SNAP regulations pass muster under either theory. Assuming store owners have some recognizable property right to accept EBT funds—a proposition for which the Razzaks provide no support—there is no question it is not a fundamental right. To survive a substantive due process challenge, therefore, the regulations must merely have some rational basis. *Malagon de Fuentes v. Gonzales*, 462 F.3d 498, 505 (5th Cir. 2006). Numerous courts have upheld the SNAP disqualification scheme as constitutional in light of substantive due process challenges. *See, e.g., Traficanti*, 227 F.3d at 175 ("[W]e hold that the statute's strict liability regime is rationally related to the government's interest in preventing fraud."); *Kim*, 121 F.3d at 1274

(rejecting a substantive due process challenge and concluding disqualification of "innocent store owners whose employees engage in trafficking violations for their own benefit and without the owner's knowledge or consent" is rationally related to Congress's goal of promoting the adoption of effective SNAP compliance policies); *TRM, Inc. v. United States*, 52 F.3d 941, 947 (11th Cir. 1995) ("Congress could rationally have concluded that a store owner who risks losing the ability to accept food stamps is more likely to be vigilant and vigorous in the prevention of employee trafficking."). This Court agrees, and finds the SNAP disqualification scheme is rationally related to the government's legitimate interest in preventing trafficking.

The story is similar for procedural due process challenges. Although the requirements of procedural due process are somewhat flexible, "[a]t a minimum, due process requires that notice and an opportunity to be heard 'be granted at a meaningful time and in a meaningful manner.'" *F.D.I.C. v. SLE, Inc.*, 722 F.3d 264, 270 (5th Cir. 2013) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972)). The SNAP disqualification scheme offers aggrieved store owners avenues for administrative review and judicial review by means of a "trial de novo" in a district court. Such a system comports with procedural due process requirements. *Kim*, 121 F.3d at 1274–75 ("A trial de novo . . . satisfies the strictures of procedural due process."); *TRM*, 52 F.3d at 944 (same); *Spencer v. U.S. Dep't of Agric.*, 142 F.3d 436, 1998 WL 96569, at *3 (6th Cir. 1998) (unpublished) ("[T]he *de novo* trial provided all the process that was due, and more.").

## Conclusion

The Razzaks concede at least one of their employees engaged in trafficking. They failed to present substantial evidence of an effective compliance policy at the administrative level, and have failed to do so again in this Court. In the absence of such evidence, Congress requires

disqualification. This penalty may seem harsh to seemingly innocent store owners, but it remains the remedial scheme Congress chose to protect the SNAP program and deter trafficking and other fraudulent activity.

Accordingly,

IT IS ORDERED that Defendants United States of America and Tom Vilsack's Motion for Summary Judgment [#16] is GRANTED.

SIGNED this the 13th day of February 2014.

*/s/ Sam Sparks*
SAM SPARKS
UNITED STATES DISTRICT JUDGE